**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**

**CIVIL NO. 1:06CV20**

| | |
|---|---|
| **STATE OF NORTH CAROLINA,** *ex rel.* ) | |
| **ROY COOPER, Attorney General,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **Vs.** ) | **MEMORANDUM AND** |
| ) | **O R D E R** |
| **TENNESSEE VALLEY AUTHORITY,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the parties' motions for summary judgment. **Plaintiff's Motion for Partial Summary Judgment, filed July 2, 2007; Defendant's Motion for Summary Judgment (Subject Matter Jurisdiction), filed July 31, 2007; Defendant's Motion for Summary Judgment (Insufficiency of the Evidence), filed August 10, 2007.**

**I. PROCEDURAL HISTORY**

On January 30, 2006, North Carolina filed a complaint against Defendant Tennessee Valley Authority ("TVA") seeking "to address

emissions of air pollution from TVA's coal-fired electric generating units ('EGUs') installed in electric generating stations ('power plants') located in Tennessee, Alabama, and Kentucky[.]" **Complaint, filed January 30, 2006, at 1**. North Carolina asserts that these emissions adversely affect "the health and welfare of citizens of [North Carolina], damage [the State's] natural resources and economy, and harm [the State's] finances." *Id.* The complaint further alleges that TVA operates its power plants in a manner that "creates a common law public nuisance in North Carolina, and in other states in the region." *Id.* The complaint seeks injunctive relief "to abate the harm caused by the TVA's emissions . . . and seeks its fees and costs incurred in this action." *Id.*

On April 3, 2006, TVA filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), on the grounds that this Court lacked subject matter jurisdiction over North Carolina's claim. **Defendant's Motion to Dismiss, filed April 3, 2006, at 1.** Specifically, TVA asserted that North Carolina's suit was barred by (1) the discretionary function doctrine, (2) the Supremacy Clause, and (3) the holding of *Ferris v. Wilbur*, 27 F.2d 462 (4th Cir. 1928). **Memorandum and Order, filed July 21, 2006, at 1.** This Court issued an order denying TVA's motion to dismiss

but later certified the order for immediate appeal to the Fourth Circuit, pursuant to 28 U.S.C. § 1292(b).  **Id. at 25; Order Certifying for Immediate Appeal, filed September 27, 2006, at 7.**  On October 31, 2007, the Fourth Circuit heard oral argument on TVA's appeal; on January 31, 2008, the Fourth Circuit affirmed this Court's order denying TVA's motion to dismiss.  ***North Carolina ex rel. Cooper v. TVA*, __ F.3d __, 2008 WL 256631, 2008 U.S. App. LEXIS 2075 (No. 06-2131) (4th Cir. 2008).**

While TVA's appeal was pending, the parties filed their motions for summary judgment and corresponding responses.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact, and judgment for the moving party is warranted as a matter of law.  **Fed. R. Civ. P. 56(c).**  "A genuine issue [of fact] exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  ***Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).**  In considering a motion for summary judgment, the Court is required to view

the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Id.*

By reviewing substantive law, the Court may determine what matters constitute material facts. ***Anderson*, 477 U.S. at 248.** "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* "The party seeking summary judgment has the initial burden to show a lack of evidence to support the nonmoving party's case." ***Shaw, supra.*** If that showing is made, the burden then shifts to the nonmoving party who must convince the court that a triable issue does exist. *Id.* A "mere scintilla of evidence" is not sufficient to defeat a motion for summary judgment. *Id.*

Accordingly, in considering the facts of the instant case for purposes of the instant motions, the Court will view the record in the light most favorable to the nonmoving party. ***Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).**

# III.  DISCUSSION

## A.    North Carolina's  Motion for Partial Summary Judgment

North Carolina has requested summary judgment as to several of TVA's fourteen defenses.

### 1.    TVA's Third Defense

In the third of its fourteen defenses, TVA argues that North Carolina "is not authorized to bring a suit to abate a public nuisance under the laws of Alabama, Kentucky, or Tennessee." **Defendant's Answer to Complaint, filed August 7, 2006, at 6-7 (citations omitted).**  North Carolina argues that a state has authority "to represent the interests of its citizens by seeking to enjoin public nuisances, including those originating in neighboring states." **Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment, filed July 7, 2007, at 6.**  As such, North Carolina argues, its lawsuit is brought both on the State's own behalf and also pursuant to the doctrine of *parens patriae*, which is "a standing doctrine under which a state may under proper circumstances sue on behalf of its citizens when a separate quasi-sovereign interest . . . is at stake." ***United States v. Johnson*, 114 F.3d 476, 481 (4th Cir. 1997).**

The Supreme Court has long authorized lawsuits by sovereign states seeking to address the problems caused by interstate pollution.  ***See generally, e.g., New Jersey v. City of New York*, 283 U.S. 473, 476 (1931) (enjoining defendant from "dumping noxious, offensive and injurious materials – all of which are for brevity called garbage – into the ocean . . . great quantities of the same . . . being cast upon the beaches belonging to [New Jersey]"); *Georgia v. Tennessee Copper Co.*, 206 U.S. 230, 231 (1907) (enjoining defendant from "discharging noxious gas from their works in Tennessee over [Georgia's] territory"); *Missouri v. Illinois*, 180 U.S. 208, 212 (1901) (allowing Missouri to seek injunction against Illinois' discharge of "sewage matter and poisonous filth" into the Chicago River and Lake Michigan, and eventually into the Mississippi River).**  "Congress has not . . . found a uniform, nationwide solution to all aspects of this problem [of air pollution] and, indeed, has declared that the prevention and control of air pollution at its source is the primary responsibility of States and local government."  ***Washington v. Gen. Motors Corp.*, 406 U.S. 109, 114 (1972) (citation and internal quotation marks omitted).**

Federal regulatory pollution control schemes, such as the one set forth in the Clean Air Act (CAA), 42 U.S.C. §§ 7401 to 7671q, form one principal means by which state and local authorities may act on their responsibilities as described in *General Motors*.[1]  A second, entirely separate method is to proceed under state law.  The CAA specifically anticipates this method in its savings clause, 42 U.S.C. § 7604(e).  ***See Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 343 (6th Cir. 1989) (holding that the CAA savings clause allows state law actions to abate air pollution, notwithstanding the existence of federal laws and standards governing air quality); *see also Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 492 (1987) (holding that the Clean Water Act's savings clause, 33 U.S.C. § 1365(e), allows state law actions to abate water pollution); *Gutierrez v. Mobil Oil Corp.*, 798 F. Supp. 1280, 1282-83 (W.D. Tex. 1992) (noting the similar function of the savings clauses in the Clean Water Act and the CAA).**

---

[1] In this instance, in fact, North Carolina is proceeding separately under CAA regulations.  ***See Rulemaking on Section 126 Petition from North Carolina to Reduce Interstate Transport of Fine Particulate Matter and Ozone, 71 Fed. Reg. 25,328 (Envtl. Protection Agency Apr. 28, 2006); *see also North Carolina v. Envtl. Protection Agency*, No. 05-1244 (D.C. Cir. filed July 8, 2005) (pending).**

When considering such state law claims, it is well established that the Court must apply the law of the state in which the pollution source is located, rather than the law of the state that is affected by the pollution. *Int'l Paper*, 479 U.S. at 487. In this case, North Carolina alleges violations of the public nuisance law under Alabama's statutory and common law, Kentucky's common law, and Tennessee's common law. *See* **Complaint,** *supra*, **¶¶ 22-24.**

The crux of TVA's third defense, however, is that the laws of these three states (hereinafter, the "source states") do not permit foreign sovereigns, such as North Carolina, to bring causes of action alleging public nuisance. Rather, TVA alleges, the source states' laws require that public nuisance lawsuits may only be brought by (1) the Attorney General or other arm of the state in which the alleged nuisance is located, or (2) an individual who has sustained a special harm due to the alleged nuisance, different in kind from that harm suffered by the general public. **Defendant's Response to Plaintiff's Motion for Partial Summary Judgment, filed July 19, 2007, at 1-3;** *see also Lower Commerce Ins., Inc. v. Halliday*, **636 So. 2d 430, 431 (Ala. Civ. App. 1994) (holding that public nuisance actions may be brought by the state and by**

**individuals who have sustained a special injury);** *Hancock v. Terry*
*Elkhorn Mining Co., Inc.***, 503 S.W.2d 710, 720 (Ky. 1973) (holding that**
**the state Attorney General may move to enjoin a public nuisance);**
*Embry-Bosse Funeral Home, Inc., v. Webster***, 261 S.W.2d 682, 683**
**(Ky. 1953) (holding that an individual cannot maintain a public**
**nuisance action unless he suffers special damages);** *Franer v.*
*English***, 8 Tenn. App. 121, 124 (1928) (holding that "an individual may**
**abate a public nuisance only when he suffers an injury peculiar to**
**himself, and in the absence of such injury then it is the function of the**
**public officers of the state to abate the nuisance");** *see also* **Tenn.**
**Code Ann. § 29-3-102 (empowering Tennessee attorneys general and**
**city and county attorneys to bring actions in public nuisance).**

TVA is quite correct in its statement of the laws of the source states.
In fact, the public nuisance laws of these states do not differ significantly
from those of their sister states across the country. ***See generally***
***Restatement (Second) of Torts* § 821C (explaining that the only**
**parties who may recover for public nuisance are the state, individuals**
**who have been specially damaged, or members of a class in a class**
**action lawsuit).** The oldest instances of these restrictions, in fact, date

back to at least the sixteenth century.  ***See id.* at cmt. a (describing a 1536 case allowing recovery in a nuisance action for "a person who could show he had suffered particular harm, over and above that caused to the public at large").**  TVA argues that North Carolina, since it is not the state in which the alleged nuisance is located, belongs in the category of private individuals, and that it accordingly must show special damage – which, TVA alleges, it cannot do.

The undersigned is unconvinced, however, that North Carolina's status as a foreign quasi-sovereign relegates it to the same category as private individuals who wish to recover for a public nuisance.  In one of its interstate pollution cases, the Supreme Court stated that "[t]he reasons on which prescription for a public nuisance is denied or may be granted to an individual as against the sovereign power to which he is subject have no application to an independent state." ***Missouri v. Illinois*, 200 U.S. 496, 520 (1906).**  In a later case, the Court elaborated:

> When the states by their union made the forcible abatement of outside nuisances impossible to each, they did not thereby agree to submit to whatever might be done.  They did not renounce the possibility of making reasonable demands on the ground of their still remaining quasi-sovereign interests. . . . *The states, by entering the Union, did not sink to the position of private owners, subject to one system of private law.*

***Georgia*, 206 U.S. at 237-38 (emphasis added).**

In light of these specific pronouncements by the high court, and taking into consideration the dearth of authority on the specific issue from the source states themselves,[2] this Court cannot conclude that the laws of Alabama, Kentucky, and Tennessee should be interpreted to require North Carolina to show a special injury in this case, as if it were any other private individual wishing to proceed with a public nuisance suit under color of state law. ***See N.Y. State Nat'l Org. for Women v. Terry*, 704 F. Supp. 1247, 1261 (S.D.N.Y. 1989) (holding that "[a]lthough a private litigant must show special damages in order to be entitled to relief on a cause of action for public nuisance, *a governmental entity* is not required to make such a showing." (emphasis added)), *modified on other grounds*, 886 F.2d 1339 (2d Cir. 1989).**

The Court's conclusion is indirectly supported by the framework of case law that has grown up around the "special injury" requirement. This framework manifestly does not contemplate situations in which a foreign

---

[2] The parties have not cited any case or statute from Alabama, Kentucky, or Tennessee that speaks directly to North Carolina's ability, or lack thereof, to bring the instant lawsuit, and the Court's independent research has not thus far revealed any such authority.

sovereign or quasi-sovereign wishes to recover, in a *parens patriae* capacity, for a public nuisance. Rather, the laws of Alabama, Kentucky, and Tennessee measure an individual's "special injury" by examining whether it is different from that injury suffered by the public at large. **Sandlin v. Blanchard, 250 Ala. 170, 172, 33 So. 2d 472, 473 (1947) (defining a special injury as "special damages different, not merely in degree, but in kind, from that suffered by the public at large"); *Taylor v. Barnes*, 303 Ky. 562, 564, 198 S.W.2d 297, 298 (1946) (defining a special injury as "an injury distinct from that suffered by the general public"); *Franer*, 8 Tenn. App. at 124 (holding that an individual's special injury must be "an injury peculiar to himself").** Here, the State of North Carolina, as *parens patriae,* is effectively bringing suit on behalf of the North Carolina public at large. As such, it makes no sense to interpret the laws of the source states as requiring North Carolina to prove that its damages are *different* from those of the public at large. **See Georgia, 206 U.S. at 237 (observing that the essence of the interstate pollution suit was "an injury to [the plaintiff Georgia] in its capacity of quasi-sovereign" and that "alleged damage to the state as a private owner is merely a makeweight [argument]").**

In so holding, the Court is mindful of the tangible public policy concerns underlying the basic tendency to limit which parties may sue on a public nuisance theory. As New York's high court has noted:

> One of the basic reasons for the origin of the rule generally limiting the bringing of actions to restrain public nuisance to the Attorney-General was the danger of multiplicity of suits. . . . The other consideration which led to the establishment of the general rule was largely theoretical and conceptual, i.e., that the offense, being common to the public, should be enjoined at the suit of the sovereign's law officer.

***New York Trap Rock Corp. v. Town of Clarkstown*, 299 N.Y. 77, 84, 85 N.E.2d 873, 877 (1949) (in suit involving a dispute over operation of a quarry, assigning broad interpretation to general rule limiting public nuisance plaintiffs to state attorney general).**

The Court's decision in the instant case undermines neither of these "basic reasons" – indeed, it furthers them. As to the first reason, allowing North Carolina to proceed as *parens patriae* could, if anything, reduce the risk of a "multiplicity of suits" by North Carolinians alleging they are affected by TVA's actions. The second consideration is also satisfied, as the instant lawsuit is allegedly common to the North Carolina public, and the "sovereign's law officer" has indeed brought suit, with the State of North Carolina serving as plaintiff *ex relatione*.

The Court accordingly concludes that the public nuisance laws of Alabama, Kentucky, and Tennessee should not be construed as prohibiting North Carolina, a foreign quasi-sovereign, from bringing the instant lawsuit. Thus, there are no genuine issues of material fact with respect to TVA's third defense, and North Carolina is entitled to summary judgment as a matter of law regarding that defense.

### 2.    TVA's Fourth Defense

TVA's fourth defense is that its EGUs are in compliance with federal and state statutes and regulations, and, as such, they cannot constitute public nuisances.  **Answer, *supra*, at 7.**  North Carolina, without conceding the fact of TVA's compliance, argues that it is entitled to summary judgment on this defense because "the law is clear that an otherwise lawful action can constitute a public nuisance."  **Memorandum in Support of Partial Summary Judgment, *supra*, at 8.**

The Supreme Court has discussed the potential tension between state nuisance law and federal permitting systems.  ***Int'l Paper*, 479 U.S. at 499.**  Ultimately, the Court chose to balance these competing interests, observing that, on one hand, "[state] nuisance law may impose separate

standards and thus create some tension with the permit system," but on the other hand, "the restriction of suits to those brought under source-state nuisance law prevents a source from being subject to an indeterminate number of potential regulations." *Id.* This way, the Court noted, "a source only is required to look to a single additional authority [beyond the federal permitting system], whose rules should be relatively predictable." *Id.* The Court addressed state permitting systems in the same analysis, noting that "States can be expected to take into account their own nuisance laws in setting permit requirements." *Id.*

*International Paper* thus speaks conclusively to the current dispute. TVA is open to suit despite its alleged compliance with its permits, based on the "additional authority" of the source states' nuisance laws. In return, however, TVA is protected from being sued under the nuisance laws of those states – such as North Carolina – who claim to be affected by its pollution.

TVA, moreover, has cited no case or statute indicating that Alabama, Kentucky, or Tennessee public nuisance law would balance the equities otherwise. Indeed, the laws of the source states are unanimous in concluding that otherwise lawful actions may be the subject of nuisance

lawsuits. ***See, e.g., Russell Corp. v. Sullivan*, 790 So. 2d 940, 951 (Ala. 2001) (holding that even actions taken in "accordance with state and federal regulations" and "permissible under various permits" may still support a claim for nuisance if the plaintiff "can prove the elements of nuisance"); *Louisville and Jefferson County Air Bd. v. Porter*, 397 S.W.2d 146, 151 (Ky. 1965) ("We have departed from the notion that the non-negligent operation of a lawful business cannot be a nuisance."); *Sherrod v. Dutton*, 635 S.W.2d 117, 121 (Tenn. App. 1982) (authorizing the "sparing" use of injunctions to abate lawful enterprises causing a public nuisance); *see also* Ala. Code § 6-5-120 (providing that the "fact that the act done may otherwise be lawful does not keep it from being a nuisance").**

The Court, therefore, concludes that North Carolina is entitled to summary judgment as to TVA's fourth defense.

### 3. TVA's Sixth Defense

North Carolina also requests summary judgment on TVA's sixth defense, which is that North Carolina may not seek to prove CAA violations in this venue. **Answer, *supra*, at 7.** As the Complaint limits itself to

allegations of public nuisance under state law – and does not allege a violation of the federal CAA – the Court concludes that North Carolina is entitled to summary judgment on this defense.

### 4.  TVA's Tenth Defense

TVA's tenth defense is that, as Kentucky and Tennessee are comparative fault jurisdictions, *see* Ky. Rev. Stat. § 411.182 and Tenn. Code Ann. § 20-1-119, any relief granted under the laws of these two states must take into account the contribution that North Carolina, as Plaintiff, has made to the pollution of its own air.  In support of this defense, TVA cites *Missouri v. Illinois*, in which the Supreme Court observed that, even if Illinois' discharges in the Chicago area floated down the Mississippi River and harmed St. Louis residents, Missouri itself also discharged pollution into the river upstream of St. Louis.   **200 U.S. at 522.** In so noting, the Court stated, "it warrants the defendant in demanding the strictest proof that the plaintiff's own conduct does not produce the result, or at least so conduce to it, that courts should not be curious to apportion the blame." *Id.*

North Carolina argues that comparative fault is not a proper consideration in a suit for injunctive relief and, therefore, summary judgment is appropriate for this defense. The Court agrees. Only a year after *Missouri v. Illinois*, the Supreme Court held in *Georgia v. Tennessee Copper Company* that the damage a sovereign state had done to its own environment did not preclude that state from suing others who polluted it. ***Georgia*, 206 U.S. at 238.** "It is a fair and reasonable demand on the part of a sovereign that the air over its territory should not be polluted . . ., that the forests on its mountains, *be they better or worse, and whatever domestic destruction they have suffered*, should not be further destroyed or threatened by the act of persons beyond its control . . . ." ***Id.* (emphasis added).**

The Court, therefore, concludes that summary judgment is appropriate for TVA's tenth defense. As the suit progresses, the Court will of course continue to bear in mind the Supreme Court's caution in *Missouri v. Illinois*, as to the necessity of "strictest proof that the plaintiff's own conduct does not produce the result" of which North Carolina complains. **200 U.S. at 522.**

**5.     TVA's Twelfth Defense**

TVA's twelfth defense states, in its entirety, "[i]f Plaintiff establishes liability, it is not entitled to the issuance of an injunction based on Plaintiff's own conduct, including conduct amounting to laches, waiver, estoppel, or unclean hands." **Answer, *supra*, at 9.** In response to North Carolina's summary judgment challenge, TVA concedes that these equitable defenses are not necessary in a suit for injunctive relief. **TVA's Response to Plaintiff's Motion for Partial Summary Judgment, *supra*, at 21 n.9.** TVA nonetheless argues that, should this case proceed to a remedial stage, "Plaintiff's own conduct is something the Court will need to consider in balancing the equities." ***Id.* at 21.** North Carolina counters that "[e]ven if this Court determines that the law does not bar an equitable defense against North Carolina in this action, TVA lacks adequate facts to meet its burden of proving the elements of its four equitable defenses." **Memorandum in Support of Motion for Partial Summary Judgment, *supra*, at 17.**

As TVA has conceded that its equitable defenses do not pertain to the liability stage of this lawsuit, the undersigned believes that a ruling on

the permissibility of these defenses is premature.  North Carolina's motion for summary judgment is, therefore, denied.

### 6.    TVA's Eleventh and Thirteenth Defenses

TVA concedes that summary judgment is appropriate on its eleventh defense of contributory negligence, as North Carolina has dropped its negligence claims.  Summary judgment is, therefore, granted as to this defense.

As to TVA's  thirteenth defense of failure to state a claim upon which relief may be granted, TVA has not, at this stage, presented any arguments in support of this defense, and therefore, North Carolina's motion for summary judgment as to this defense is also granted.

### B.    TVA's Motion for Summary Judgment Based on Subject Matter Jurisdiction

TVA's motion for summary judgment based on subject matter jurisdiction points out that North Carolina is already pursuing a section 126 petition using the regulatory process of the Environmental Protection Agency (EPA).  **Rulemaking on Section 126 Petition from North Carolina to Reduce Interstate Transport of Fine Particulate Matter and**

**Ozone, 71 Fed. Reg. 25,328 (Envtl. Protection Agency Apr. 28, 2006).**

As North Carolina's regulatory case is currently pending in the D.C. Circuit,

TVA alleges the instant action is an impermissibly duplicative collateral

attack. ***North Carolina v. Envtl. Protection Agency*, No. 05-1244 (D.C.**

**Cir. filed July 8, 2005) (pending).**  In support of this argument, TVA relies

on *Virginia v. United States*, in which the Fourth Circuit stated:

> It is settled that "when Congress has chosen to provide the
> circuit courts with exclusive jurisdiction over appeals from
> agency [actions], the district courts are without jurisdiction over
> the legal issues pertaining to final [actions] – whether or not
> those issues arise from the statutes that authorized the agency
> action in the first place." . . .  CAA § 307(b)(1) channels review
> of final EPA action exclusively to the courts of appeals,
> regardless of how the grounds for review are framed.

**74 F.3d 517, 523 (4th Cir. 1996) (alterations in original) (quoting**

***Palumbo v. Waste Techs. Indus.*, 989 F.2d 156, 161 (4th Cir. 1993)).**

North Carolina replies that the instant lawsuit and the section 126 petition

were brought on different grounds, and therefore, both actions can proceed

simultaneously.

The undersigned agrees.  In the *Virginia* case, the Fourth Circuit

noted that "the practical objective of the complaint [was] to nullify final

actions of the EPA."  *Id*.  Such is not the case here.  Rather, in this case,

North Carolina's section 126 petition is based on non-attainment of

National Ambient Air Quality Standards ("NAAQS").  The petition seeks emissions reductions from sources in thirteen states.  By contrast, the instant lawsuit names sources in only three states, and all argument has thus far pertained solely to the public nuisance laws of those states. Nothing in North Carolina's complaint suggests that the "practical objective" of this lawsuit is to "nullify" the EPA's final action of April 28, 2006.

Moreover, as noted above, the CAA's savings clause, 42 U.S.C. § 7604(e), specifically contemplates actions like the present lawsuit, and the *International Paper* fully addresses the balance that the Supreme Court has struck between the  potentially competing interests that result from this arrangement.  **479 U.S. at 499.**

For these reasons, the Court concludes that TVA's motion for summary judgment based on subject matter jurisdiction must be denied.

### C.     TVA's Motion for Summary Judgment Based on Insufficiency of the Evidence

Finally, the Court must address TVA's motion for summary judgment based on insufficiency of the evidence.  TVA contends that North Carolina has brought forward insufficient evidence to prove that the emissions from

TVA's EGUs are causing an existing public nuisance or that the emissions would create a future public nuisance. **Defendant's Motion for Summary Judgment (Insufficiency of the Evidence),** *supra***, at 3.** In response, North Carolina argues that it has presented sufficient evidence to allow a reasonable jury to find that TVA's emissions create a current public nuisance under the laws of each of the source states. **Plaintiff's Response to TVA's Motion for Summary Judgment (Insufficiency of Evidence), filed September 4, 2007, at 4.** Specifically, North Carolina alleges that TVA's current emissions harm public health by causing premature deaths, hospitalizations for respiratory and cardiovascular complications, exacerbations of asthma attacks, and cause harm to the environment. *Id.* North Carolina further argues that allegations in the complaint regarding a future public nuisance are supported by the evidence "because TVA's emissions currently cause injuries, and will continue to cause injuries for the for the foreseeable future." *Id.*

### 1.    Laws of the Source States

In Alabama, a nuisance "is anything that works hurt, inconvenience or damage to another.  The fact that the act done may otherwise be lawful

does not keep it from being a nuisance." ***Russell Corp. v. Sullivan*, 790 So. 2d 940, 951 (Ala. 2001)**. "'A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals.'" ***Id.* (quoting Ala. Code § 6-5-121).**

In Kentucky, the courts employ the *Restatement (Second) of Torts* definition of a public nuisance. ***Roberie v. VonBokern*, 2006 WL 2454647, at \*3, 2006 Ky. LEXIS 186, at \*9-10 (Ky. 2006).**

> (1) A public nuisance is an unreasonable interference with a right common to the general public.
>
> (2) Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following:
>
>> (a) [w]hether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or
>>
>> (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or
>>
>> (c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

***Id.* (quoting *Restatement (Second) of Torts* § 821B)**.

In Tennessee, a public nuisance is defined as "an act or omission that unreasonably interferes with or obstructs rights common to the public." ***Wayne County v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 283 (Tenn. Ct. App. 1988) (citing Restatement (Second) of Torts § 821B (1977))**.

Each of these source states has found that air pollution can create an actionable public nuisance. ***Nat'l S. Prod. Corp. v. City of Tuscaloosa*, 20 So. 2d 329 (Ala. 1977); *Martin Bldg. Co. v. Imperial Laundry Co.*, 124 So. 82 (Ala. 1929); *Ohio River Sand Co. v. Kentucky*, 467 S.W.2d 347, 348-49 (Ky. 1971); *Penn-Dixie Cement Corp. v. City of Kingsport*, 189 Tenn. 450, 456-57, 225 S.W.2d 270, 273-74 (1949) (holding that a public nuisance includes whatever may prove detrimental to human life or health).** The source states also define a future or "anticipatory" nuisance as one whose existence is uncertain or has yet to come into being. ***Parker v. Ashford*, 661 So. 2d 213, 217 (Ala. 1995); *Bd. of Educ. of Louisville v. Klein*, 197 S.W.2d 427, 428 (Ky. 1946); *State ex rel. Cunningham v. Feezell*, 218 Tenn. 17, 20-22, 400 S.W.2d 716, 717-18 (1966).**

The source states specifically recognize injunctive relief as an equitable remedy available to the courts to abate a public nuisance. *Nat'l S. Prod.*, *supra; Martin Bldg. Co.*, *supra; Ohio River Sand Co.*, *supra*; *Commonwealth v. McGovern*, 75 S.W. 261, 264-65 (Ky. 1903); *Weakley v. Page*, 102 Tenn. 178, __, 53 S.W. 551, 556 (1899).

### 2.      North Carolina's Evidence

TVA, as the party seeking summary judgment, has the initial burden to demonstrate that there is an absence of evidence to support North Carolina's claims. *See Shaw*, 13 F.3d at 798. TVA's arguments pertain principally to the nature and weight of North Carolina's evidence. When ruling on a motion for summary judgment, however, "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts" are ordinarily decided by the factfinder and thus are not proper considerations at the summary judgment stage. *Anderson*, 477 U.S. at 255. In considering the facts of the case for purposes of this motion, the Court will view the pleadings and material presented in the light most favorable to North Carolina, the nonmoving party. *Matsushita Elec.*, *supra.*

On review of the filings made herein, the Court finds North Carolina has presented sufficient evidence to allow a reasonable jury to conclude that TVA's EGUs cause "an unreasonable interference" with "the public health, the public safety, . . . the public comfort or the public convenience." ***Restatement (Second) of Torts*** **§ 821B.** Specifically, North Carolina, through its medical and public health experts, offers evidence tending to show that emissions from TVA's EGUs have a significant negative impact on North Carolinians' health and safety. **Plaintiff's Exhibit 8, Declaration of David B. Peden, M.D., M.S., filed September 4, 2007, at Attachment B, at 1; Plaintiff's Exhibit 9, Declaration of Dr. Jonathan I. Levy, Sc.D., filed September 4, 2007, ¶ 7; Attachment A to Levy Declaration, at 3; Plaintiff's Exhibit 11, Declaration of Donald W. Russell, M.D., filed September 4, 2007, ¶ 5.** The "unreasonableness" of TVA's alleged interference is further forecast by North Carolina's evidence regarding the availability and feasibility of scrubbers that could control emissions on certain EGUs. **Plaintiff's Exhibit 1-3, 17.**

In sum, the Court, having carefully examined the full record in this matter, concludes that there are genuine issues of material fact and that North Carolina has offered sufficient evidence to support each element of

public nuisance under the laws of Alabama, Kentucky, and Tennessee. Consequently, TVA's motion for summary judgment on the issue of insufficiency of the evidence must be denied.

## IV.  ORDER

**IT IS, THEREFORE, ORDERED** that North Carolina's motion for partial summary judgment is **ALLOWED IN PART**, and TVA's Third, Fourth, Sixth, Tenth, Eleventh and Thirteenth Defenses are hereby **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that North Carolina's motion for partial summary judgment is **DENIED** as to the TVA's Twelfth Defense.

**IT IS FURTHER ORDERED** that TVA's motions for summary judgment for insufficiency of the evidence and for lack of subject matter jurisdiction are hereby **DENIED.**

Signed: February 26, 2008

Lacy H. Thornburg
United States District Judge